UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VICTORIA ROBINSON,

    Plaintiff,

    v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

    Defendant.

Civil Action No. 18-2383 (JEB)

**MEMORANDUM OPINION**

Plaintiff Victoria Robinson, who struggles with depression and anxiety, believes that her former employer, Defendant Washington Metropolitan Area Transit Authority, unlawfully discriminated against her in violation of the Family Medical Leave Act and the Rehabilitation Act. Contending that it acted appropriately, WMATA now moves for summary judgment on all claims. Because Plaintiff fails to even dispute many of Defendant's factual and legal assertions, the Court will grant the Motion as to the FMLA claims and those Rehabilitation Act claims relating to her 2018 termination. As she has done just enough to proceed on her Rehabilitation Act claim regarding her forced change of position in 2017, however, the Court will deny the Motion in part.

**I.    Background**

As described more fully below, Robinson has not filed a Statement of Disputed Material Facts or otherwise offered record citations. The Court, accordingly, draws its facts here largely from Defendant's submissions.

1

Robinson suffers from major depressive disorder and general anxiety disorders. See ECF No. 18-6 (Declaration of Yasmin Mitchell), Exh. B (Accommodation Requests) at 2–3. From 2013 to 2017, she worked as a Senior Financial Systems Analyst at WMATA. See ECF No. 23 (Pl. Opp. to Def. MSJ) at 2–3; ECF No. 23-2 (Pl. Interrog.) at 6. In December 2013, Robinson requested — and WMATA approved — a disability accommodation allowing her to work 30 hours per week instead of the typical 40. See ECF No. 20 at 27; Pl. Interrog. at 6. Robinson alleges, without any specificity, that she was pressured to return full-time while working under a modified schedule between 2013 and 2016. See ECF No. 20-1 (Pl. Oct. 17, 2019, Dep.) at 39–40. Between 2014 and 2015, Plaintiff's performance evaluations reported "improvement required." Id. at 39, 49.

In March 2017, WMATA transferred Robinson to a new position; it informed her that her disability accommodation would not transfer and that she would need to file a new request. See Pl. Interrog. at 6; ECF No. 18-5 (Declaration of Avraam R. Patriotis), ¶ 7. She promptly did so. See Accommodation Requests at 1–5. WMATA denied her requests, however, and sent her a letter explaining the decision and offering four alternative accommodations. See Mitchell Decl., Exh. C (Denial Letter). Robinson apparently never responded. See Mitchell Decl., ¶ 10; Pl. Opp. at 7–8.

Following her transfer in 2017, she was placed on a Performance Improvement Plan. See Patriotis Decl., Exh. A (Performance Review Memo) at 1; Pl. Interrog. at 6 (claiming this Plan was "illegal," but failing to explain why). She was ultimately terminated in February 2018. See Pl. Opp. at 4; ECF No. 18-2 (Def. SMF), ¶ 8. WMATA asserts that this action was merited given Robinson's history of poor work performance. See Mitchell Decl., ¶ 4.

After exhausting the EEOC administrative process, Robinson brought this suit alleging unlawful discrimination and retaliation under the FMLA and the Rehabilitation Act. See ECF No. 9 (Am. Compl.), ¶¶ 2–5, 25–32. She claims that WMATA discriminated against her by transferring and terminating her, and that it unlawfully denied her request for a new accommodation after her transfer. Id., ¶¶ 25–32. Defendant has now moved for summary judgment on all counts.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it can affect the substantive outcome of the litigation. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Liberty Lobby, 477 U.S. at 248; see Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895.

When a motion for summary judgment is under consideration, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Liberty Lobby, 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record," such as affidavits, declarations, or other evidence. See Fed. R. Civ. P. 56(c)(1).

In light of this requirement, and pursuant to Local Rule 7(h), the Court, in resolving summary-judgment motions, "may assume that facts identified by the moving party in the statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." These rules "assist[ ] the district court to maintain docket control and to decide motions for summary judgment efficiently and effectively." Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 150 (D.C. Cir. 1996). "The procedure contemplated by the rule thus isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record." Id. at 150–51 (quoting Gardels v. CIA, 637 F.2d 770, 773 (D.C. Cir. 1980)).

### III. Analysis

The Court begins by addressing a procedural defect raised by WMATA before moving to the merits of Robinson's FMLA and Rehabilitation Act claims.

#### A. Procedural Challenge

As noted above, WMATA points out that Robinson has not complied with Fed. R. Civ. P. 56(e) and Local Rule 7(h). See ECF No. 24 (Def. Reply) at 2. Defendant is, for the most part, correct. To begin, Plaintiff submits no separate statement of disputed material facts, as Local Rule 7(h)(1) requires. In addition, her Opposition never points to specific portions of WMATA's Statement of Facts with which she disagrees. See Pl. Opp. at 1–4. Indeed, the factual recitation in her brief contains no record citations at all. Instead, much of it merely repeats verbatim her Amended Complaint. Compare Am. Compl., ¶¶ 7–15, 17, with Pl. Opp., ¶¶ 7–15, 17. To make matters more confusing, it oscillates between first and third person. See Pl. Opp., ¶ 6 ("Plaintiff was going through a grievance that involved my performance evaluation . . . .").

4

Only three record citations appear anywhere in her brief. See Pl. Opp. at 6. She cites her 14-page interrogatory responses with no meaningful indication of the document's relevance or contents. And she cites two vague affidavits from former colleagues — one purporting to "corroborate with all the issues set forth by [Robinson]," ECF No. 23-3 (Affidavit of Edward T. Riddick) at 1, and the other attesting to her mental state in the workplace. See ECF No. 23-4 (Affidavit of Eliza Comer) at 1. These citations make it difficult to determine the significance of the materials she included and leave the Court guessing about the inferences she would have it draw from them.

Such deficiencies could alone warrant a grant of summary judgment in WMATA's favor. See SEC v. Banner Fund Int'l, 211 F.3d 602, 615–16 (D.C. Cir. 2000) (upholding district court's grant of summary judgment for SEC because defendant failed to follow Local Rule 7.1(h)). Indeed, Local Rule 7(h) "embodies the thought that judges 'are not like pigs, hunting for truffles buried in briefs' or the record." Potter v. Dist. of Columbia, 558 F.3d 542, 533 (D.C. Cir. 2009) (Williams, J., concurring) (quoting United States v. Dunkel, 927 F.2d 995, 956 (7th Cir. 1991)). The Court, consequently, "is not 'obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis and determinations of what may, or may not, be a genuine issue of material disputed fact.'" Id. at 550 (alteration in original) (quoting Twist v. Meese, 854 F.2d 1421, 1425 (D.C. Cir. 1988)).

Yet, mindful of the impact of granting summary judgment and unwilling to take such a step lightly, the Court has waded through the materials both parties submitted in docket entries 18, 20, 23, and 24. It now turns to the merits, noting that it will treat as admitted all of WMATA's facts that Robinson failed to contest.

B.  FMLA

WMATA first asserts that it is entitled to sovereign immunity against Robinson's oblique claims under the FMLA. See Def. MSJ at 3–4. Plaintiff never responds to this argument at all. See Pl. Opp. 5–8. In this Circuit, when a plaintiff does not respond to an issue raised by a defendant on summary judgment, the Court may treat that argument as conceded. See Singh v. Dist. of Columbia, 55 F. Supp. 3d 55, 66 (D.D.C. 2014); Iweala v. Operational Techs. Servs., Inc., 634 F. Supp. 2d 73, 80–81 (D.D.C. 2009). The Court therefore grants WMATA's Motion as to this claim.

C.  Rehabilitation Act

Robinson contends that WMATA violated the Rehabilitation Act by (1) denying her accommodation request following her transfer by (2) discriminating and (3) retaliating against her when it transferred and ultimately terminated her. The Act "prohibits federal agencies from engaging in employment discrimination against disabled individuals." Nuriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016) (citing 29 U.S.C. § 791(b)). It "bars several different types of discrimination" including "failure to accommodate," "intentional discrimination," and "retaliation." Welch v. Skorton, 299 F. Supp. 3d 102, 108 (D.D.C. 2018) (quoting Drasek v. Burwell, 121 F. Supp. 3d 143, 153–54 (D.D.C. 2015)). When assessing the obligations of an employer under the Rehabilitation Act, courts apply the same standards as under the Americans with Disabilities Act. Id. (citing 42 U.S.C. § 12101). The Court here considers each type of claim separately.

1.  *Failure to Accommodate*

Robinson first alleges that WMATA failed to accommodate her disability by denying her request for a 30-hour work week. See Pl. Opp. at 7. The Rehabilitation Act requires federal

6

employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." Minter v. Dist. of Columbia, 809 F.3d 66, 69 (D.C. Cir. 2015) (quoting 42 U.S.C. § 12112(b)(5)(A) (ADA Provision)); see also 29 U.S.C. § 794(d) (Rehabilitation Act incorporating ADA standards). Plaintiff seemingly claims that WMATA did not accommodate her disability when it withdrew her modified schedule and "denied her request for a reasonable accommodation" after her transfer. See Ward v. McDonald, 762 F.3d 24, 32 (D.C. Cir. 2014).

Robinson having made a reasonable request, see Doak v. Johnson, 798 F.3d 1096, 1105 (D.C. Cir. 2015) ("[T]he Rehabilitation Act expressly recognizes 'job restructuring' and 'part-time or modified work schedules' as reasonable accommodations.") (quoting 42 U.S.C. § 12111(9)(B)), the question is whether WMATA improperly "denied" it. Following a request, the employer and the employee must engage in an interactive, "flexible give-and-take" process to "determine what accommodation would enable the employee to continue working." Ward, 762 F.3d at 32 (quoting EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 805 (7th Cir. 2005)). To "establish that her request was 'denied,' [a plaintiff] must show either that the [agency] in fact ended the interactive process or that it participated in the process in bad faith." Minter, 809 F.3d at 69 (alterations in original) (quoting Ward, 762 F.3d at 32).

This she cannot do, as no reasonable juror could find that WMATA — rather than Robinson — was responsible for the breakdown in communication. The parties agree that the Authority offered Robinson four alternative accommodations. See Pl. Opp. at 7; Def. SMF ¶ 12. Indeed, WMATA's ADA Program Manager sent her a detailed letter explaining why they had denied her request and offering to discuss the alternatives. See Denial Letter at 1–2. WMATA asserts — and Robinson offers no evidence to dispute — that she never responded to this offer,

7

ultimately halting the interactive process. See Mitchell Decl., ¶ 10; Pl. Opp. at 7–8; see also Scarborough v. Natsios, 190 F. Supp. 2d 5, 26–27 (D.D.C. 2002) (finding plaintiff prematurely terminated interactive process by failing to respond to detailed letter explaining denial and asking for additional documentation).

Even though WMATA effectively withdrew Robinson's pre-existing accommodation by transferring her and not carrying over her modified schedule, it proceeded to engage in the interactive process after she requested the same accommodation. While withdrawing a pre-existing accommodation may indeed give rise to liability, see Isbell v. John Crane, Inc., 30 F. Supp. 3d 725, 736 (N.D. Ill. 2014) (finding failure to accommodate when employer "unilateral[ly] retract[ed] [plaintiff's] pre-existing reasonable accommodation" and made no attempt to "work with [plaintiff] to adjust the existing accommodation"); Brown v. Smith, 21 F. Supp. 3d 974, 982 (S.D. Ind. 2014) (denying summary judgment to employer who withdrew the "accommodation completely to [plaintiff's] detriment"), this is not such a case. In the above cases accommodations were withdrawn without evidence of any further negotiations. But here, WMATA sufficiently responded to Robinson's renewed request; as a starting point, it offered four alternatives. By refusing to engage in the interactive process, Plaintiff cannot now blame WMATA.

2. *Discrimination*

Robinson next claims that WMATA discriminated against her because of her disability when it transferred her in March 2017 and terminated her in February 2018. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination" by a federal employer. See 29 U.S.C. § 794(a). Under the Act, "the two essential elements of a discrimination claim are that (i) the

8

plaintiff suffered an adverse employment action (ii) because of the plaintiff's . . . disability." Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (citing 29 U.S.C. §§ 701 *et seq.*). Even if there is an undisputed adverse action, an employer may still succeed on summary judgment if it "asserts a legitimate, nondiscriminatory reason for" that action, and the plaintiff does not present "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason" for the action. See Welch, 299 F. Supp. 3d 102, 111 (D.D.C. 2018) (citing Adayemi v. Dist. of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008)). The Court looks at each adverse action.

a. March 2017 Transfer

First, Plaintiff contends that on March 8, 2017, "her position (Sr. Financial Systems Analyst) was . . . riffed [eliminated via a reduction in force]," and she was informed that she could either leave her job at WMATA or move to another position beginning the following week. See Pl. Opp. at 3; Pl. Interrog. at 6. She further contends that, of the four employees sharing her position, she was the only one whom WMATA transferred. See Pl. Opp. at 3. As a reminder, before her transfer, Robinson had a disability accommodation allowing her to work 30 hours per week. Id. at 2; ECF No. 20 at 27. In her deposition, Plaintiff averred that, before being transferred, "pressure was being imposed upon her to work full-time" despite "the fact that she was under medical care." Pl. Oct. 17, 2019, Dep. at 39–40. When notifying her of the transfer, WMATA informed her that her disability accommodation would not carry over to her new position. See Pl. Interrog. at 6. The transfer thus caused her to lose her prior accommodation.

WMATA acknowledges this series of events. See Def. SMF, ¶¶ 6, 11, 12, 21. It responds that Robinson's "role at WMATA was eliminated by reduction in force authorized by

9

the General Manager." Id., ¶ 6. Yet the Authority never addresses why she was transferred while the other three non-disabled employees in her position were not. Robinson, therefore, has raised a genuine dispute of material fact as to the "actual reason" for her transfer. Although this claim survives for now, WMATA may be able to argue subsequently that Robinson's transfer was not an "adverse employment action" under the Act.

b. February 2018 Termination

She has not, however, refuted WMATA's nondiscriminatory justification for her termination on February 27, 2018. In justifying this action, Defendant provided Robinson's 2014 and 2015 evaluations reporting "improvement required." ECF 20-1 at 39, 49. Indeed, WMATA placed her on a Performance Improvement Plan in October 2017, see Patriotis Decl., ¶ 8; Performance Review Memo at 1, and it has submitted a memorandum describing Plaintiff's poor performance during that time. See Performance Review Memo at 3–11 (describing Robinson's reluctance to take initiative, failure to prepare for meetings, lack of engagement in discussions, and repeated tardiness when completing assignments). Rather than contesting Defendant's characterization of her performance, Robinson merely states that the Improvement Plan was "illegal." Pl. Interrog. at 6.

She admits that WMATA "offered 'legitimate, non-discriminatory reasoning that [she] struggled to perform at an acceptable level" but maintains that this "is merely a pretext . . . because [she] properly submitted medical document[s] to [WMATA] to request [a] reasonable accommodation." Pl. Opp. at 6 (citing only her Amended Complaint). Yet this point responds to the accommodation issue, not the termination, and she provides no evidence indicating that her termination was tied to her disability, rather than poor performance. The Court thus finds that there is no factual dispute over WMATA's non-discriminatory justification.

3. *Retaliation*

Robinson's final claim is that WMATA unlawfully retaliated against her in response to her accommodation request. "To establish a retaliation claim, [a plaintiff] must show . . . that there 'existed a causal link' between [the adverse action] and her request for an accommodation." Minter, 809 F.3d at 70 (citing Smith v. Dist. of Columbia, 430 F.3d 450, 455 (D.C. Cir. 2005)). Like a discrimination claim, if "an employer asserts a legitimate, nondiscriminatory reason for an adverse employment action," a plaintiff cannot prevail unless she shows "that the employer's asserted non-discriminatory reason was not the actual reason" for the adverse action. Id. at 71 (quoting Adayemi, 525 F.3d at 1226). To do so, the plaintiff "must produce some objective evidence calling the truthfulness of the employer's rationale into question." Duncan v. WMATA, 425 F. Supp. 2d 121, 129 (D.D.C. 2006) (citing Brown v. Brody, 199 F.3d 446, 459 (D.C. Cir. 1999)).

The Court first notes that Robinson has not clearly stated her theory of retaliation — that is, whether she contends that WMATA transferred her in March 2017 because of her prior accommodation, or that WMATA terminated her in February 2018 because of her post-transfer accommodation request. The Court's conclusion derives from its previous discussion. More specifically, having already found that Robinson's 2018 termination was for a non-discriminatory reason, WMATA is correct that this retaliation claim fails as well. Conversely, Robinson has presented just enough evidence to dispute whether WMATA transferred her in 2017 because of her prior successful accommodation request. To the extent she alleges that her 2017 transfer was retaliatory, her claim survives.

11

**IV.    Conclusion**

For these reasons, the Court will grant in part and deny in part Defendant's Motion for Summary Judgment.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 7, 2020